UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
OCEAN PARTNERS, LLC and BATTERY      :
COMMERCIAL ASSOCIATES, LLC,          :
                                     :
                    Plaintiffs,      :
                                     :
         -v-                         :
                                     :
NORTH RIVER INSURANCE COMPANY,       :
                                     :
                    Defendant.       :
------------------------------------ X

**04 CV 470 (BSJ) (GWG)**

<u>ORDER</u>



**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Ocean Partners, LLC and Battery Commercial Associates, LLC (collectively, "Ocean Partners" or "Plaintiffs") have brought suit against Defendant North River Insurance Company ("North River" or "Defendant") to recover insurance proceeds for damages sustained to 17 Battery Place (the "Building"). North River had issued a first-party property insurance policy for the period January 26, 2001 to January 26, 2002 (the "Policy"). The Building, which is located in lower Manhattan near the World Trade Center ("WTC"), was "impacted" by materials generated from the collapse of the Twin Towers on September 11, 2001 ("WTC Particulate"), and, subsequently, Ocean Partners submitted a claim to North River for its property damage. North River determined that Ocean Partners suffered

"some compensable loss," for which North River paid $3,104,849.48. After North River declined to make any further payments, Ocean Partners filed suit seeking additional payments under the Policy.

North River moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that coverage is not available because of two exclusions in the Policy. On January 14, 2008, Magistrate Judge Gabriel W. Gorenstein issued a Report and Recommendation ("R&R"), recommending that Defendant's motion be denied. Specifically, Judge Gorenstein found that, following the Second Circuit's decision in Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33 (2d Cir. 2006), the meaning of the pollution exclusion contained in the Policy must be resolved by the trier of fact. Moreover, Judge Gorenstein rejected North River's argument that the collapse of the WTC was the "efficient" cause of the loss, and, therefore, the "collapse" exclusion did not apply. Finally, Judge Gorenstein declined to address North River's argument, put forth for the first time in its reply brief, that the "corrosion" exclusion bars coverage.

Defendant filed timely objections to the R&R, specifically, the portions related to the pollution and corrosion exclusions. For the reasons that follow, the Court rejects Defendant's

objections and adopts the R&R in whole; thus, the Defendant's motion for summary judgment is DENIED.

**DISCUSSION**[1]

In its objections to the R&R, North River challenges the denial of the summary judgment motion on two grounds. First, North River argues that Judge Gorenstein did not directly address whether a question of material fact exists with respect to whether WTC Particulate is a "contaminant" in light of expert reports that were submitted in connection with the case. North River asserts that the evidence and admissions in this case already establish that the WTC Particulate is a contaminant under the "contextual approach" described in Parks Real Estate, and that summary judgment is appropriate. Second, North River objects to Judge Gorenstein's declining to consider the application of the corrosion exclusion in the Policy because it was first addressed by North River in reply papers.

A.  Standard of Review

Under Federal Rule of Civil Procedure 72(b), a District Court "shall make a de novo determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). The Court "may accept, reject, or modify the recommended decision." Id.

---

[1] Additional background information has been laid out in the R&R. Defendant, in its Objections, does not dispute the background of the case as set forth in the R&R and only challenges the application of the law therein.

3

B.  The Pollution Exclusion

   1.  Determining the Scope of an Exclusion

Summary judgment is appropriate in a contract dispute "only if the language of the contract is wholly unambiguous." Compagnie Financiere de Cic et de L'Union Europeenne v. Merrill Lynch, 232 F.3d 153, 157-58 (2d Cir. 2000) (citations omitted). Determining whether "the language of a contract is clear or ambiguous is a question of law to be decided by the court." Id. at 158. If a "reasonably intelligent person" could objectively find more than one meaning of the language in a contract, in light of the agreement as a whole, then the language is ambiguous. See id. (citations omitted). "[A]n ambiguity is not created simply because the parties to an insurance contract put forward different interpretations of its terms, particularly 'where one of two competing constructions is strained or unnatural.'" Colson Services Corp. v. Ins. Co. of N. Am., 874 F.Supp. 65, 68 (S.D.N.Y. 1994) (quoting County of Schenectady v. Travelers Ins. Co., 368 N.Y.S.2d 894, 897 (3d Dep't 1975)). Instead, ambiguity exists where a reasonably intelligent person could find more than one meaning of a contract term in light of the agreement as a whole and the customs and practices of a particular trade. See World Trade Ctr. Props., 345 F.3d at 184. When ambiguous language is found by the court, its meaning is generally to be resolved by the factfinder unless "the evidence

4

presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide to the contrary" or if the non-moving party fails to identify extrinsic evidence supporting its interpretation of the contract's language. Id.

Under New York law, an insurance contract is construed in the same manner as other contracts and must be read to give effect to the intent of the parties as expressed in the plain meaning of the words in the contract. See id. at 183-84 ("[W]ords should be given the meanings ordinarily ascribed to them and absurd results should be avoided.")(citing Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986)); see also Ogden Corp. v. Travelers Indem. Co., 681 F.Supp. 169, 173 (S.D.N.Y. 1988). With respect to the applicability of an exclusion, the insurer bears the burden of proving that a claim falls within the scope of an exclusion. See, e.g., Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115-16 (2d Cir. 1995); Maurice Goldman & Sons, Inc. v. Hanover Ins. Co., 607 N.E.2d 792, 793 (N.Y. 1992). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Sea Ins. Co. v. Westchester Fire Ins. Co., 51 F.3d 22, 26 (2d Cir. 1995) (citation omitted).

2.  The Policy

In a section labeled "Exclusions," the Policy provides:

2.  We will not pay for loss or damage caused by or resulting from . . .:

    ***

    j. Discharge, dispersal[,] seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss."

Coverage Form at 15-16 of 32. The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot[,] fumes, acids, alkalis, chemicals and waste." Id. at 31 or 32.

According to an expert report submitted by Ocean Partners, the WTC Particulate that impacted the Building was made up of "more than 1.2 million tons of building materials . . . primarily from insulation and from fireproofing" which included asbestos, lead and mercury. Lee Report at 2061. A cloud of WTC Particulate moved through the Building's pathways, including its HVAC, mechanical and electrical systems. Id. at 2060. Ocean Partners asserts that the WTC Particulate must be removed from the Building to protect human health and to address damage to the Building's systems.

3.  The R&R/Defendant's Objection

North River argues that the damage at issue was "caused by or resulting from . . . dispersal . . . of 'pollutants'" insofar as the Policy's definition of "pollutant" includes the word "contaminant." In the R&R, Judge Gorenstein noted that the term "contamination" was also contained in the policy at issue in Parks Real Estate, another insurance coverage case involving infiltration of WTC Particulate in which the Second Circuit considered at length whether "contamination" was an ambiguous term. The court in Parks Real Estate found the term "contamination" was ambiguous in the context of the contract because the breadth of its common definition would function to exclude coverage in "a limitless variety of situations." 472 F.3d at 45. In light of the ambiguity in the term, the Second Circuit determined that the parties were permitted to introduce evidence of what they intended "contamination" to mean under the policy. Id. at 48.

Because of the strong similarities between the policy in Parks Real Estate and the Policy in the present case, Judge Gorenstein found that it is not clear that the term "contamination" in the present case was intended to exclude WTC Particulate, and that such a determination should be made by a trier of fact. North River does not appear to object to the finding that the term is ambiguous. However, Defendant does argues that, because there are more than 25 instances in

Plaintiffs' expert reports where scientific and environmental experts refer to WTC Particulate as a "contaminant" or "contamination," Judge Gorenstein was incorrect in finding that a question of fact remains regarding the meaning of this term. In North River's view, the experts' use of these terms constitutes proof that the WTC Particulate is a "contaminant" and thereby an excluded pollutant.

North River's argument is not tenable, however. As Judge Gorenstein noted in the R&R, the experts' use of the words "contaminant" or "contamination" in their reports is "entirely consistent with the Parks Real Estate ruling." R&R at 16. The repeated use of these terms in the reports underscores the holding of the Second Circuit in Parks Real Estate: that the word "contaminant" has a commonly-used meaning, but that meaning is so "broad" that it is ambiguous in the context of the insurance policy that is being considered. See 472 F.3d at 47-48. As the court noted, "the term 'contamination' may be used improperly as a synonym for various types of damage and chemical processes, which may or may not properly be classified as contamination or excluded from coverage under the terms of a policy." Id. at 45. Thus, the Court cannot accept North River's view that the use of the term by the experts in their scientific and environmental reports is evidence of the parties' intent with respect to use of the term in the Policy.

Accordingly, the Court finds that the term "contaminant" as applied to the pollution exclusion in the Policy is ambiguous, and that its meaning remains for resolution by a factfinder and not the Court on summary judgment.

C. The Corrosion Exclusion

North River also objects to Judge Gorenstein's declining to consider its argument that the "corrosion" exclusion contained in the Policy bars the claims in this case. Judge Gorenstein, in a footnote to the R&R, noted that North River's notice of motion and initial brief raised only the pollution and collapse exclusions as bars to coverage. Because the first discussion of whether the "corrosion" exclusion bars Plaintiff's claims is found in Defendant's reply papers, Judge Gorenstein declined to address the argument. R&R at 10 n.8 (citing Fisher v. Kanas, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007); Estate of Ungar v. Palestinian Auth., 451 F. Supp. 2d 607, 611 (S.D.N.Y. 2006); ABN Amro Verzekeringen BV v. Geologistics Ams., Inc., 485 F.3d 85, 97 n.12 (2d Cir. 2007)).

In its objections, North River attempts to distinguish the procedural history of this case from the facts of the cases cited in the R&R. North River argues that it "raised" the corrosion exclusion in its initial memorandum, although the Court notes that it did so only in a short footnote that states, in its entirety, that "[t]he policy also excludes 'corrosion' as

a cause of loss." Def.'s Mem. of Law at 7 n.4. Defendant also attempts to distinguish this case on the grounds that its discussion of the corrosion exclusion in the reply papers was the result of a "judicial admission" on the part of Plaintiffs in their response memorandum. However, in particular because it is the insurer's burden to establish an exclusion to a policy, the Court does not find it appropriate to deviate from the general rule set forth in the case law that it is improper practice to raise arguments in the first instance in a reply brief. See Patterson v. Balsamico, 440 F.3d 104, 114 (2d Cir. 2006). Accordingly, the Court adopts the recommendation of Judge Gorenstein that Defendant's argument regarding the corrosion exclusion not be considered on summary judgment.

## CONCLUSION

Having reviewed the objected-to portions of the R&R de novo in light of the parties' arguments, this Court adopts Judge Gorenstein's well-reasoned R&R in whole. Accordingly, Defendant's motion for summary judgment is DENIED.

**SO ORDERED:**

                                     *Barbara S. J*
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         February 28, 2008